IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JERRI RIDDLE, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) ) ) v. ) ) SUNTRUST BANK, ) ) Defendant. ) | CIVIL ACTION NO.<br><br>1:08-cv-1411-RWS |

**JOINT MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT OF MOTION**

**I.  INTRODUCTION**

This is a Fair Labor Standards Act ("FLSA") collective action in which Plaintiffs, former employees of SunTrust Bank ("SunTrust"), contend that SunTrust failed to properly pay overtime wages as required under the FLSA, 29 U.S.C. § 201 et seq.. SunTrust denies Plaintiffs' contentions. Following extensive litigation of the matter, the Parties mediated the dispute and reached a proposed settlement agreement. The Parties now seek the Court's approval of the agreement as required by the FLSA. As set forth below, the Court should approve the Parties'

settlement because it is fair, reasonable, and adequate, and all class members have agreed to the Settlement.

## II.  SUMMARY OF THE LITIGATION AND THE SETTLEMENT

Plaintiff Jerri Riddle filed this lawsuit on April 14, 2008.  In her Complaint, Riddle claimed that SunTrust failed to pay her and others similarly situated overtime for all hours worked over 40 in a week.  *See* Complaint (Dkt. 1).  After the lawsuit was filed, the Parties litigated a conditional class certification motion and engaged in significant discovery.  After a day-long mediation session in June 2010 failed to result in a settlement, Defendant served and Plaintiffs rejected Offers of Judgment, and the Parties engaged in further settlement discussions with the assistance of the mediator.

Ultimately, the Parties agreed to a total settlement of all damages claims, costs, and attorneys' fees for a Total Settlement Amount.  The Parties memorialized their agreed terms of settlement in the Agreement of Terms for Mediated Settlement ("Agreement of Terms") that has been submitted as Exhibit 1.  Contemporaneously herewith, the parties are requesting leave of Court to file Exhibit 1 under seal because of the confidential provisions to which the parties agreed.  The Agreement of Terms provides that, subject to fairness review and approval by the Court, the Plaintiffs will be entitled to receive the Total Settlement

Amount, inclusive of all costs and fees. (Ex. 1, Agreement of Terms ¶ 4.) This negotiated Total Settlement Amount reflects a compromise between the Parties, with each party taking into account a wide range of possible outcomes that would be impacted by the number of overtime hours each Plaintiff worked, the method of calculating the overtime payment, and the question of whether the Court would award liquidated damages. Attorneys' fees under the settlement were fixed at one-third of the total settlement, consistent with the Court approved Consent to be Party Plaintiff form. (See Dkt. 24-1 at p. 8; Ex. 1, Agreement of Terms ¶ 5.) After attorneys' fees and costs and the Service Payment Amounts are deducted, the Net Settlement Amount will be apportioned to the individual Named Plaintiff and each opt-in Plaintiff based on his or her self-reported overtime hours.[1] (Ex. 1, Agreement of Terms ¶ 6.)

After the settlement was reached, all Plaintiffs received a copy of the Agreement of Terms which was also explained in correspondence and discussions with each opt-in Plaintiff. Each opt-in Plaintiff was advised about the attorneys' fees and costs associated with the settlement. Each named and opt-in Plaintiff executed an individual Confidential Settlement Agreement and General Release in the form contemplated by the Settlement Agreement. (*See* Ex. 1, Agreement of

---

[1]   The Net Settlement Amount is set forth in Exhibit 1.

Terms ¶ 2(a) & Exh. A.).  Each Plaintiff was thoroughly advised by Plaintiffs' counsel of the range of possible outcomes in this litigation, and the risk associated with having rejected the Offers of Judgment.  Each Plaintiff accepted the settlement, which is presently before the Court.

### III.  ARGUMENT

A.      **Standard for Approval of Settlement of FLSA Collective Action.**

Settlement of private actions for back wages pursuant to 29 U.S.C. § 219(c) must be approved by the district court.  *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982.)  The decision of whether to approve of a collective action settlement lies within the trial court's discretion.  *See id.* at 1350.  In order to approve a settlement proposed by an employer and employees, a court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Id.* at 1355.  If a settlement in an employee FLSA suit reflects a "reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

In determining whether the settlement is fair, adequate, and reasonable, courts typically examine the following factors that are also used in approving the settlement of class actions under Federal Rule of Civil Procedure 23:

(1) the existence of collusion behind the settlement;
(2) the complexity, expense, and likely duration of the litigation;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the probability of plaintiff's success on the merits;
(5) the range of possible recovery; and
(6) the opinions of counsel.

See *Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1530-31, n.6 (11th Cir. 1994); *Garcia v. Riccy's Landscaping Servs., Inc.*, No. 6:08-cv-706-Orl-28GJK, 2009 WL 347418 at *2 (M.D. Fla. Feb. 11, 2009); *Hitchcock v. Orange County, Fla.*, No. 604CV1722ORL28JGG, 2006 WL 3614925 at *3 (M.D. Fla. Dec. 11, 2006). Further, the Court should be mindful of the strong presumption in favor of finding a settlement fair. *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994) (noting that the Eleventh Circuit Court of Appeals "favor[s] and encourage[s] settlements in order to conserve judicial resources."); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (noting that "particularly in class action suits, there is an overriding public interest in favor of settlement".)[2]

---

[2] Decisions of the Fifth Circuit Court of Appeals decided prior to October 1, 1981 are binding within the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

B.     **The Settlement Terms Are Fair, Adequate, and Reasonable.**

As set forth below, an examination of each of the applicable factors makes clear that the terms of the Parties' Agreement of Terms in this case are fair, adequate, and reasonable and should be approved by the Court.

   1.     *The Existence of Collusion Behind the Settlement.*

The Parties voluntarily agreed to enter mediation. The Parties hired Daniel Klein, an experienced Atlanta-based mediator and litigator, to mediate the case. In addition to Plaintiffs' New York and Georgia counsel and counsel for SunTrust, the named Plaintiff and a SunTrust representative also participated in the mediation.

In the course of the mediation and during additional settlement discussions following the conclusion of the formal mediation, Plaintiffs' counsel provided defense counsel with Plaintiffs' analysis of the potential maximum liability that Plaintiffs anticipated that they could recover in this case if all of the disputed issues were resolved in Plaintiffs' favor. This analysis included a three-year statute of limitations, overtime at the rate of time and one-half, liquidated damages, and full credit for all Plaintiffs' claimed hours of work. In response, SunTrust presented Plaintiffs with alternative analyses of potential liability that would be likely if

6

overtime were calculated at a half-time rate,[3] if the Court declined to award liquidated damages, and if SunTrust could establish inflation in the Plaintiffs' self-reported hours of work. Taking into account the time value of money and the risks of the various claims and defenses, the Parties settled for the Total Settlement Amount which included the Attorneys' Fees Amount and the Costs Amount.[4]

Thus, this was an arms-length, mediated negotiation in which all Parties were well-represented. The case was strongly litigated. There is no collusion, undue pressure, or any other deficiencies that would raise any concerns about the process by which the parties reached the Agreement of Terms.

*2. The complexity, expense, and likely duration of the litigation.*

The Agreement of Terms allows Plaintiffs to recover a substantial recovery now, without suffering the delay and risk of litigating the claims. In this matter, further litigation including appeals could drag on for years and require the expenditure of a tremendous amount of resources. With two sets of plaintiffs' attorneys, fees and costs would continue to increase, and potentially exceed the value of plaintiffs' aggregated claim. By settling now, Plaintiffs significantly reduced their attorneys' fees. Further, to prove the claims with certainty,

---

[3]   *See Urnikis-Negro v. American Family Property Services*, --- F.3d ---, 2010 WL 3024880 (7th Cir. 2010). This Court, in *Allen v. SunTrust*, had also previously indicated that the half-time method might be permissible.

[4]   The Attorneys' Fees Amount and Costs Amount are set forth in Exhibit 1.

additional discovery would have to be had into liability, defenses, and individual damages.  The process would inevitably involve continued discovery disputes, some of which would likely require the intercession of the Court.  SunTrust would likely file a decertification motion and depose all ten Plaintiffs, and Plaintiffs would depose additional SunTrust witnesses prior to trial.  And the Plaintiffs would have had to travel to Atlanta, Georgia for their depositions taken, increasing Plaintiffs' out-of-pocket costs. Further, any appeal would continue to delay the case.

In short, the settlement is fair because it provides plaintiffs with a substantial recovery now, avoiding the risk and delay of litigation.

   3.   *The Stage of the Proceedings and the Amount of Discovery Completed.*

This factor considers whether the Parties have had the opportunity to fully evaluate the claims.  *Carnegie v. Mutual Sav. Life Ins. Co.*, No. Civ. A. CV-99S3292NE, 2004 WL 3715446, *22 (N.D. Ala. 2004); *Meyer v. Citizens and Southern Nat.* Bank, 677 F. Supp. 1196, 1209-10 (M.D. Ga. 1988) citing *Holmes v. Continental Can Company*, 706 F.2d 1144, 1149 (11th Cir. 1983); *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 185 (W.D.N.Y. 2005) ("While the parties need not have engaged in extensive discovery, a sufficient factual investigation

must have been conducted to afford the Court the opportunity to intelligently make an appraisal of the Settlement.") (internal quotations omitted).

In this case, the parties exchanged voluminous documents and interrogatory responses on the Plaintiffs' job duties, pay and working schedules, company policies and procedures, and possible defenses to FLSA liability. SunTrust produced many thousands of electronic and paper documents and Plaintiffs produced hundreds of pages of documents. As a result of these efforts, the Parties had sufficient information upon which to assess the potential merit of each claim, ultimate liability, and the apparent risk of proceeding to trial.

The Parties reached the Settlement Agreement near the end of an extended discovery period. By this time, the Parties had fully considered all information necessary to adequately value the case.

    4.    *The Probability of Plaintiffs' Success on the Merits.*

If this action were to proceed on the merits, Plaintiffs would advocate for the time and one-half method for calculating back pay, liquidated damages, and a three-year statute of limitations (as opposed to a two year statute for non-willful violations under 29 U.S.C. §255a). SunTrust, on the other hand, would argue for the halftime damages calculation method (which would reduce damages by more than 75%), no liquidated damages and a two-year statute of limitations. Thus,

bona fide disputes exist as to each of these significant points.  Further, bona fide disputes also remain for trial regarding whether Plaintiffs were actually misclassified as exempt from the FLSA overtime provisions, and regarding the amount of overtime Plaintiffs actually worked.  In resolving the case, the Parties considered the various risks associated with their respective positions on each issue, including the time value of money and attorneys' fees and costs.  Plaintiffs also considered the risks involved with SunTrust's Rule 68 Offers of Judgment and expected decertification motion. Both parties eliminated significant litigation risks by resolving the case.

     5.    *The Range of Possible Recovery.*

"[T]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  During mediation and the subsequent settlement discussions, there was a broad range of potential recovery.  However, the range is not a floor or a cap.  Plaintiffs alleged that SunTrust did not maintain Plaintiffs' actual hours worked.  SunTrust claims that it did.  Therefore at trial, Plaintiffs' testimony and SunTrust's various computer based records would determine the hours Plaintiffs worked.  Because the

information was imperfect, the Parties also relied upon Plaintiffs' self-reported hours in negotiating a settlement. The settlement provides a reasonable estimate of individual damages and avoids the time-consuming and likely futile exercise of trying to determine exact individual damages. If the litigation were to continue, some Plaintiffs might not recover at all.

      6.    *Counsels' Opinions.*

Based on what was learned through extensive discovery, the parties negotiated a fair settlement for the Plaintiffs. The settlement avoids the risks of not establishing liability at trial. SunTrust advanced a variety of defenses that it would press at trial, including a potential decertification motion. Many of the defenses are fact-intensive determinations. As such, these issues involve significant risks for Plaintiffs' recovery. Further, trial would involve the development of extensive proof with respect to complex legal and factual issues such as the proper measure of damages and estimating hours worked, and proving damages could require complicated proof issues as well. In short, "[t]he [s]ettlement [a]greement in this matter represents a compromise between the strengths of plaintiffs' case and the possible success of [Defendant's] defenses." *Eastman Kodak,* 228 F.R.D. at 186; *see also*, *Pelletz v. Weyerhaeuser Co.*, 2009 WL 59126, *6 (W.D. Wash. 2009); *Carnegie v. Mutual Sav. Life Ins. Co.*, No. Civ. A. CV-99S3292NE, 2004 WL

3715446, *22 (N.D. Ala. 2004). Plaintiffs' counsel recommended acceptance of this settlement as well within the zone of plaintiffs' reasonable outcomes.

C. **The Settlement Shares Should be Finally Approved As Fair and Reasonable**

As noted above, each Plaintiff's share of the settlement amount is based on self-reported overtime hours worked. (Agreement of Terms ¶ 6 & Exh. C.) A settlement allocation need only have a reasonable, rational basis, particularly if recommended by "experienced and competent class counsel." *In re American Bank Note Holographics, Inc.,* 127 F.Supp.2d 418, 429-30 (S.D.N.Y. 2001); *see also Holmes v. Continental Can Co.,* 706 F.2d 1144, 1149 (11th Cir. 1983); *Pelletz,* 2009 WL 59126 at *6; *Meyer v. Citizens and Southern Nat.* Bank, 677 F.Supp. 1196, 1209-10 (M.D. Ga. 1988). Plaintiffs' counsel, Getman & Sweeney and The Garber Law Firm, are experienced in FLSA class overtime litigation having handled many scores of cases around the nation and believe that the proposed allocation provides the most equitable manner of distribution of the settlement fund to the plaintiffs. Plaintiffs' counsel considers this plan to be objectively reasonable and to fairly compensate plaintiffs for their unpaid overtime and damages suffered as a result of the pay practices challenged in this case. "As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight." *American Bank,* 127 F.Supp.2d at 429-30.

## IV. PROCEDURE

Within thirty (30) days after the Court enters an Order approving the settlement, SunTrust shall tender all payments. (Ex. 1, Agreement of Terms ¶ 3.) Immediately upon such tender by SunTrust, the Parties will file a Stipulation of Dismissal with Prejudice. (Ex. 1, Agreement of Terms ¶ 3 & Exh. B).

## V. CONCLUSION

All of the factors discussed above weigh heavily in favor of a finding that the settlement is fair, reasonable and adequate. The Parties respectfully request that the Court: (a) grant approval of the settlement; and (b) approve the Attorneys' Fees Amount and the Costs Amount.

[SIGNATURES ON THE FOLLOWING PAGE]

Respectfully submitted this 15th day of October, 2010.

| | |
|---|---|
| s/ Alan H. Garber | s/ Brett E. Coburn |
| Alan H. Garber | Glenn G. Patton |
| Georgia Bar No. 283840 | Georgia Bar No. 567235 |
| Marc Garber | glenn.patton@alston.com |
| Georgia Bar No. 283847 | Brett E. Coburn |
| THE GARBER LAW FIRM, P.C. | Georgia Bar No. 171094 |
| Suite 14, 4994 Lower Roswell Road | brett.coburn@alston.com |
| Marietta, GA  30068 | ALSTON & BIRD, LLP |
| (678) 560-6685 | 1201 West Peachtree Street |
| (678) 560-5067 (facsimile) | Atlanta, Georgia 30309-3424 |
| ahgarber@garberlaw.net | (404) 881-7000 |
| mngarber@garberlaw.net | (404) 881-7777 (facsimile) |
| | |
| Dan Getman | COUNSEL FOR DEFENDANT |
| Matthew Dunn | |
| GETMAN & SWEENEY, PLLC | |
| 9 Paradies Lane | |
| New Paltz, NY 12561 | |
| (845) 255-9370 | |
| (845) 255-8649 (facsimile) | |
| dgetman@getmansweeney.com | |
| mdunn@getmansweeney.com | |
| | |
| COUNSEL FOR PLAINTIFF, | |
| individually and on behalf of others | |
| similarly situated | |